IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSHUA COPENHAVER NELSON,

        **Plaintiff,**

    vs.                             Civil Action 2:12-cv-1167
                                            Judge Graham
                                          Magistrate Judge King

WANZA JACKSON, *et al.,*

        **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff, a state inmate formerly incarcerated at the London Correctional Institution ("LoCI") and currently incarcerated at the Marion Correctional Institution ("MCI"), brings this civil rights action under 42 U.S.C. § 1983 claiming a denial of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution in connection with the alleged denial of Kosher meals, service of non-Kosher food products and other alleged service problems with his meals at LoCI. Plaintiff also asserts claims under 42 U.S.C. §§ 1985, 1988, 2000d and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). This matter is before the Court on *Plaintiff's Motion for Summary Judgment*, Doc. No. 42 ("*Motion for Summary Judgment*").

## I. BACKGROUND

Plaintiff has been deemed "sincerely Jewish" for purposes of participating in the Kosher meal program of the Ohio Department of Rehabilitation and Corrections ("ODRC") since February 25, 2010. *Exhibit A* ("*Response to Request for Religious Accommodation,*" stating

1

that "Mr. Copenhaver checks out as being <u>sincerely Jewish</u>.  I talked

with his Rabbi in Michigan.") (emphasis in original)), attached to

*Amended Complaint*, Doc. No. 32.  Plaintiff was transferred from MCI to

LoCI on August 17, 2012[1] and began participating in LoCI's "Kosher Meal

Program" the next day.  *Affidavit of Joshua A. Copenhaver Nelson*, Doc.

No. 32-1, dated October 5, 2012, ¶¶ 3-4 ("*Plaintiff's October 5, 2012*

*Affidavit*").

        According to plaintiff, he was served meat and dairy during the

same meal and was required to cook or reheat his meal in a microwave

on the Sabbath, all in violation of his religious beliefs.  *Id*. at ¶¶

5-6. Named as defendants in the action are William Gallaer, LoCI's

former Food Service Manager, Wanza Jackson, the Religious Services

Administrator for the Ohio Department of Rehabilitation and

Corrections ("ODRC"), and Steven Cahill, LoCI's Chaplain, in their

official and individual capacities.  *Amended Complaint*, ¶¶ 10-16.

Plaintiff seeks monetary and injunctive relief.  *Id*. at ¶¶ 45-49.

        On August 20, 2013, the Court granted in part and denied in part

defendants' motion to dismiss.  *Order*, Doc. No. 48.  More

specifically, the Court denied the motion to dismiss as to the

following claims: (1) plaintiff's claims against all defendants under

the Equal Protection Clause and 42 U.S.C. §§ 1985, 1988 and 2000d; (2)

plaintiff's claims under the First and Eighth Amendments and RLUIPA

against defendants Gallaer and Jackson based on the service of meat

and dairy at the same meal and requiring plaintiff to cook his meal on

---

[1] Plaintiff was later transferred back to MCI on or around August 12, 2013,
which is where he currently resides.  *See* Doc. No. 49.

the Sabbath; (3) plaintiff's claims under the First and Eighth
Amendments and RLUIPA against defendant Cahill based on requiring
plaintiff to cook his meal on the Sabbath; and (4) claims against
defendants in their official capacities for prospective injunctive
relief. *Id.* at 2.

Plaintiff now moves for summary judgment on some or all of his
remaining claims. *Motion for Summary Judgment*, pp. 4 (moving for
summary judgment on "all or part of" his claims), 6 (seeking grant of
"summary judgment or partial summary judgment"); *Plaintiff's Reply in
Response to Memorandum in Opposition to Motion for Summary Judgment By
Defendants*, Doc. No. 78, p. 11 ("*Reply*") (requesting that "at least
partial summary judgment be entered upon the physical injury issue").
Defendants oppose the *Motion for Summary Judgment*, *Defendants Wanza
Jackson, Steven Cahill, and William Gallaer's Memorandum in Opposition
to Plaintiff's Motion for Summary Judgment (Doc. 42)*, Doc. No. 76
("*Memo. in Opp.*").

## II. STANDARD

The standard for summary judgment is well established.  This
standard is found in Rule 56 of the Federal Rules of Civil Procedure,
which provides in pertinent part:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In making this determination, the evidence
must be viewed in the light most favorable to the non-moving party.
*Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970).  Summary judgment
will not lie if the dispute about a material fact is genuine, "that

is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *Catrett,* 477 U.S. at 323.  Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations.  It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'"  *Glover v. Speedway Super Am. LLC,* 284 F.Supp.2d 858, 862 (S.D. Ohio 2003)(citing

4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Instead, the non-moving party must support the assertion that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F.Supp. 2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*  *See also* Fed. R. Civ. P. 56(c)(3).

## III. CLAIMS FOR INJUNCTIVE RELIEF

The parties agree that plaintiff's claims for injunctive relief are moot in light of his transfer back to MCI.  *Memo. in Opp.*, pp. 5-6 (citing Doc. No. 49; *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009)); *Reply*, p. 8.  These claims, therefore, cannot proceed.  Only plaintiff's claims for monetary relief remain.

## IV. EQUAL PROTECTION CLAIMS

In moving for summary judgment, plaintiff complains that defendants discriminated against him "by not providing access to the same vegetables, fruits and desserts like other general population prisoners[.]" *Motion for Summary Judgment*, p. 5.  Defendants construe this allegation, apparently combined with allegations in the *Amended*

5

*Complaint*, ¶ 31 (alleging that plaintiff "has been denied fresh fruit other than apples"), to amount to claims under the Equal Protection Clause. *Memo. in Opp.*, p. 16. Defendants argue that the *Motion for Summary Judgment* must be denied on this claim because (1) the Court has already concluded that an alleged failure to provide fresh fruit other than apples does not rise to the level of a constitutional violation and (2) plaintiff had access to the same fruit as all inmates at LoCI. *Id.* (citing

The Equal Protection Clause applies to the states and requires "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV. To state an equal protection claim in the prison context, a plaintiff must allege that he was treated differently than other similarly situated prisoners. *See McCleskey v. Kemp, Supt. Ga. Diagnostic and Class. Ctr.*, 481 U.S. 279, 292-93, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987). However, a plaintiff does not establish "a violation of his equal protection rights simply by showing that other inmates were treated differently. He would have to show that he 'was victimized because of some suspect classification, which is an essential element of an equal protection claim.'" *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) (quoting *Booher v. United States Postal Serv.*, 843 F.2d 943, 944 (6th Cir. 1988)). Suspect classes include those based on race, religion and national origin. *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998).

Here, there is no evidence that plaintiff was victimized because of his membership in a suspect class. As the moving party, plaintiff

bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *See Catrett,* 477 U.S. at 323. Nothing in the record supports plaintiff's conclusory allegation that he was not provided the same access to fruits and vegetables as was the general population. Indeed, the record reflects the contrary. *See Affidavit of William Gallaer*, ¶ 13, attached as *Exhibit 1* to *Memo. in Opp.* ("*Gallaer Affidavit*") ("A variety of fruit was available to the inmates for kosher meals. Jewish inmates, including Plaintiff, were provided the same variety of fruits as non-Jewish inmates."); *Affidavit of Steven Cahill*, ¶ 25, attached as *Exhibit 3* to the *Memo. in Opp.* ("*Cahill Affidavit*") ("Joshua Copenhaver Nelson was not served apples exclusively; a variety of fruit was available to all inmates. . . . Jewish inmates had the same variety of fruit available to them as non-Jewish inmates. Kosher-keeping inmates had the same variety of fruit available to them as non-kosher-keeping inmates."). Accordingly, plaintiff's request for summary judgment on his claims under the Equal Protection Clause is not well-taken.

## V.  FIRST AMENDMENT CLAIMS

Plaintiff alleges that defendants Gallaer and Jackson violated plaintiff's rights under the First Amendment by serving him meat and dairy products at the same meal and by requiring plaintiff to cook or reheat meals on plaintiff's Sabbath. *Amended Complaint*, ¶¶ 24-27. Plaintiff further alleges that defendant Cahill similarly violated plaintiff's First Amendment rights by requiring plaintiff to cook or reheat meals on plaintiff's Sabbath. *Id.* at ¶ 27.

The First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const., Amend. 1. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, No. 09-5529, 424 F. App'x. 546, 549 (6th Cir. June 1, 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). Under § 1983, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must [first] show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citation and internal quotation marks omitted).

"Only after a prison inmate shows a sincere belief that his or her religion requires the practice at issue does the court move on to determining whether the prison's actions restricting the practice are valid." *Barhite v. Caruso*, No. 09-1312, 377 F. App'x. 508, at *510 (6th Cir. May 14, 2010) (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). "It is well-settled that prisoners' rights under the Free Exercise Clause [of the First Amendment] may be subject to reasonable restrictions." *Weinberger v. Grimes*, No. 07-6461, 2009 U.S. App. LEXIS 2693, at *9 (6th Cir. Feb. 10, 2009) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995)). Prisoners' First Amendment rights are "not violated if the challenged polices [are] reasonably related to legitimate penological interests." *Id.* (citing

8

*Turner v. Safley*, 482 U.S. 78, 89 (1987); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)). Finally, courts accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002).

### A. Sincerely Held Beliefs

In addressing defendants' motion to dismiss, the Court previously noted that the defendants did not challenge plaintiff's invocation of Judaism as his sincerely held belief or his claim that his practice of the Jewish faith requires that plaintiff keep Kosher. *Order and Report and Recommendation*, Doc. No. 45, pp. 12-13. Under those circumstances, for purposes of that motion, the Court accepted that plaintiff's religious belief was sincerely held and that his practice of Judaism requires the observance of certain dietary restrictions. *Id.* at 13.

Now, however, defendants argue that plaintiff's purported belief that he cannot heat his meals in a microwave on the Sabbath and his purported belief in keeping Kosher are not sincerely held. *Memo. in Opp.*, p. 9. In support, defendants first note that plaintiff admits that he uses a machine on the Sabbath in order to dispense hot water to heat Ramen noodles. *Id.* at 10 (citing *Plaintiff's Reply to Defendants' Memorandum in Opposition of Plaintiff's Motion for Preliminary Injunction*, Doc. No. 25, p. 3). Defendants therefore contend that "[t]he act of dispensing water to re-heat noodles is no different than the act of dispensing microwaves to re-heat pre-cooked

9

meals." *Id*.

Defendants also offer evidence that plaintiff chooses to eat non-Kosher food from the LoCI commissary. For instance, on more than one occasion, plaintiff has purchased from LoCI's commissary Maruchan Ramen Noodle Soup and Hospitality Mac & Cheese Dinners. *Id*. (citing *Exhibit 1*, *Exhibits A1-A4* attached to Doc. No. 21 (commissary records showing these purchases on various dates in 2012)). Neither product bears a kosher symbol and, according to defendants, neither product is kosher. *Id*. (citing *Affidavit of Vickey Justus*, attached as *Exhibit 2* to Doc. No. 21 ("*Justus Affidavit*") and *Exhibits A1-B2* attached thereto (photographs of food items sold in the LoCI commissary, including Maruchan Ramen Noodle Soup and Hospitality Mac & Cheese). For example, the Hospitality Mac & Cheese contains "whey, which is produced using animal derived rennet" and is therefore not Kosher. *Id*. *See also Exhibits A1-A3*, attached to *Justus Affidavit* (photograph of Hospitality Mac & Cheese packaging, including ingredients). The Ramen Noodle Soup packaging warns that it was "manufactured in a facility that also processes shellfish and fish products[,]" which establishes that the product is not Kosher. *Memo. in Opp.*, p. 11 (quoting *Exhibit B2*, attached to *Justus Affidavit*).

Defendants go on to argue that plaintiff purchased this food for his own consumption. *Id*. Plaintiff has not alleged that he has traded or given away this food, which would, in any event, violate ODRC policy. *Id*. (citing *Amended Complaint*; *Justus Affidavit*, ¶ 6; Doc. No. 25, p. 13 (plaintiff's unsworn denial that he traded or shared food)). Based on this evidence, defendants therefore take the

position that plaintiff's purported beliefs about not using a microwave to re-heat food on the Sabbath and keeping Kosher are not sincerely held.

Plaintiff, however, notes that he was deemed a sincere Jewish practitioner on February 25, 2010. *Reply*, p. 2 (citing *Exhibit A*, attached to *Amended Complaint*). Plaintiff also contends, *inter alia*, that the "Court has already established the faith of the Plaintiff to be sincerely held, despite the purchase of Ramen Noodles or the Macaroni and Cheese Dinner." *Id.* (citing *Order and Report and Recommendation*, Doc. No. 49, p. 13). Plaintiff denies that using a hot water spigot for noodles, which involves turning a knob, is equivalent to using a microwave, which uses an electrical flame in contravention of Jewish tenets. *Reply*, p. 9. Plaintiff goes on to allege that he ate only the "pasta section (not the flavoring packet) of the Ramen noodle." *Id.* at 9 (no citations to evidence). Plaintiff also contends that he did not eat the macaroni and cheese and that "upon learning of its contents he disgarded [sic] it." *Id.* at 10 (citing *Plaintiff's Reply to Defendants' Memorandum in Opposition of Plaintiff's Motion for Preliminary Injunction*, Doc. No. 25).

As an initial matter, plaintiff's factual assertions in this regard are neither sworn nor made under penalty of perjury. *Id*. Under Rule 56, a party must support factual assertions with admissible evidence. Fed. R. Civ. P. 56(c), (e). Plaintiff's *pro se* status does not relieve his of this obligation. *See Viergutz v. Lucent Techs.*, No. 08-3626, 375 F. App'x. 482, at *485 (6th Cir. April 23, 2010). *See also Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051,

at \*6-7 (6th Cir. May 5, 2010) ("The liberal treatment of pro se
pleadings does not require lenient treatment of substantive law . . .
and the liberal standards that apply at the pleading stage do not
apply after a case has progressed to the summary judgment stage[.]")
(internal citations omitted); *United States v. Brown*, 7 F. App'x. 353,
at \*354 (6th Cir. Mar. 19, 2001) (affirming grant of summary judgment
where, *inter alia*, *pro se* litigant offered relevant factual
allegations, but "did not file an affidavit to this effect nor did he
sign any pleading under penalty of perjury").  Therefore, the Court
cannot consider plaintiff's unsworn assertions in considering his
motion for summary judgment.  *See id.  See also Harris v. J.B.
Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("'[A] court
may not consider unsworn statements when ruling on a motion for
summary judgment.'") (quoting *Dole v. Elliott Travel & Tours, Inc.*,
942 F.2d 962, 968-69 (6th Cir. 1991)).

Nevertheless, the Court concludes that there exists a genuine
issue of material fact as to whether plaintiff's alleged beliefs
regarding the re-heating of food in a microwave on the Sabbath and
keeping Kosher are sincerely held.  Although it is true that the Court
previously accepted "that plaintiff's religious belief is sincerely
held and that his practice of Judaism requires the observance of
certain dietary restrictions[,]" *Order and Report and Recommendation*,
Doc. No. 45, p. 13, that conclusion was drawn in connection with the
Court's consideration of defendants' motion to dismiss and when
defendants did not challenge the sincerity of plaintiff's beliefs.
*Id.*  In addition, plaintiff was deemed sincerely Jewish in 2010, but

12

the present record reflects that plaintiff purchased food items in 2012 that were not Kosher.  Under these circumstances, the Court cannot say whether plaintiff's alleged beliefs regarding re-heating his meal in a microwave on the Sabbath and keeping Kosher are currently sincerely held.

   **B.    Meat and Dairy Served Together**

   However, assuming for present purposes only, that these beliefs are sincerely held, the Court will proceed to consider plaintiff's First Amendment claims, asserted against defendants Gallaer and Jackson, that these defendants served plaintiff meat and dairy at the same meal.  Defendants oppose summary judgment on these claims, denying that they violated plaintiff First Amendment rights and claiming qualified immunity.  *Memo. in Opp.*, pp. 6-14.

   The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials performing discretionary functions are generally shielded from liability "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).  "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established[,]" *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)), such that a "'reasonable official

13

would understand that what he is doing violates that right.'"
*Simmonds v. Genesee County*, 682 F.3d 438, 443-44 (6th Cir. 2012)
(quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). A court may
exercise discretion in determining which prong of the test it will
first address in light of the circumstances of the case. *Pearson*, 555
U.S. at 236.

As an initial matter, defendants Gallaer and Jackson deny that
they prepared meals for plaintiff, explaining that it was inmate staff
that assembled the Kosher meals. *Id.* at 13 (citing *Gallaer Affidavit*,
¶¶ 12, 15-16, 18-19; *Affidavit of Wanza Jackson*, ¶¶ 5, 12, 16-17,
attached to *Memo. in Opp.* ("*Jackson Affidavit*"). Plaintiff, however,
contends that "[a]ll of the meals were prepared by guidelines
promulgated at the prison level by Gallaer." *Reply*, p. 10 (citing
*Affidavit of Vivian Hawkins*, ¶ 8, attached as *Exhibit 4* to *Memo. in
Opp.* ("*Hawkins Affidavit*") ("Prior to the institution of the
Procedure, each prison had its own kosher meal procedure (or no kosher
meal procedure, if no inmates required or requested kosher meals).")).[2]
Although his position in this regard is unclear, plaintiff also
appears to assert that defendant Jackson "provided guidance" in the
creation of Kosher meals. *Reply*, p. 11 (citing *Cahill Affidavit*, ¶ 21
("In making food decisions, Dr. Jackson consults with dieticians, food
services, and ODRC lawyers.")). Taking this evidence as a whole, the
Court concludes that nothing offered by plaintiff contradicts
defendants' evidence that it was inmate staff, rather than defendants

---

[2] Ms. Hawkins has been ODRC's Food Services Administrator since 1993. *Id.* at ¶
4. Her duties include "ensur[ing] compliance with state and local food and
safety laws." *Id.* at ¶ 5.

Gallaer and Jackson, who physically assembled Kosher meals. Instead, plaintiff's assertions urge this Court to conclude that defendants created a formal policy designed to sabotage Kosher meals by ordering that meat and dairy be served together. There is no evidence in the record to support that assertion.

Second, defendants represent that meat and dairy were not purposely or even recklessly served together in Kosher meals. *Gallaer Affidavit*, ¶¶ 15-16, 18 (denying, *inter alia*, that he or anyone else purposely or recklessly served meat and dairy together); *Jackson Affidavit*, ¶¶ 12, 15-17 (averring that she was unaware that plaintiff was served meat and dairy together and denying that she ordered or encouraged anyone else to do so); *Cahill Affidavit*, ¶ 13 (denying that meat and dairy were purposely or recklessly served together at the same meal). According to defendants, "[s]ometimes a new inmate food service staff would put together the kosher meals and make a mistake. They put together a couple hundred meals a day, including medical meal bags, etc." *Gallaer Affidavit*, ¶ 15. *See also Cahill Affidavit*, ¶ 14 ("This [serving the two foods together] might occur when a new inmate was substituted in for the regular inmate preparing kosher meals."). Defendants therefore represent that, if meat and dairy were served together to plaintiff, that event was simply an accident. *See Cahill Affidavit* ¶ 13.

Plaintiff disagrees, representing that inmate Victor Moore, who understood the laws of Kosher, was assigned to work in the LoCI kitchen. *Reply*, p. 6. It follows, plaintiff argues, that "the actions taken to serve the meat and dairy together, were upon

directive of the defendants[.]" *Id*. Again, however, these unsworn factual assertions may not be considered on summary judgment. *See*, *e.g.*, *Harris*, 627 F.3d at 239 n.1. Therefore, defendants' evidence that meat and dairy were not recklessly or purposely served together in Kosher meals is uncontroverted.

Third, defendants proffer that any instances of serving meat and dairy together were isolated mistakes, which were immediately rectified upon notification. *Cahill Affidavit*, ¶¶ 13 (representing that plaintiff complained about this happening "one or two times" and that it "occurred only a few times"), 14 ("Upon being notified that meat and dairy were served together in a kosher meal, employees of LoCI and I would immediately rectify the situation and stop that from happening."). Plaintiff disagrees, arguing that these incidents were "ongoing, and are supported by the grievances filed by the Plaintiff, affidavits of the Plaintiff and of Antone Singletary (Jewish person) and non-Jewish offenders Charles Mason and Monroe Williams." *Reply*, p. 11. Plaintiff's vague references to grievances and affidavits do not provide the Court with specific evidence that these incidents were either numerous or ongoing. Plaintiff has not provided grievances or affidavits of inmates Singletary, Mason and Williams. Rather, plaintiff has merely cited to several of his own affidavits in support of his motion for summary judgment, leaving the Court to guess which paragraphs in which affidavits might support these assertions. As discussed *supra*, this Court is not obligated to sift through the record in an effort to find support for plaintiff's claims. *Cf*. *Glover,* 284 F.Supp.2d at 862.

Nevertheless, to the extent that the Court has been able to locate some support in plaintiff's evidentiary materials, plaintiff avers that he notified defendant Cahill "on more than a few occasions about problems with kosher meals.  He told me there was nothing he could do."  *Affidavit of Joshua Copenhaver Nelson*, dated December 26, 2013, ¶ 7, attached to *Reply* ("*Plaintiff's December 26, 2013 Affidavit*").  This vague and conclusory statement, although sworn, is insufficient to raise a material issue of fact relating to this claim.  *See*, *e.g.*, *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1034 n.5 (D. Minn. 2009).[3]

Finally, defendants suggest that mistakes in food service might also be attributable to plaintiff.  *Gallaer Affidavit*, ¶ 17; *Cahill Affidavit*, ¶ 15; *Exhibit 6*, PAGEID#:659, attached to *Memo. in Opp.* According to defendants, "[a]round November or December 2012, food services began using Joshua Copenhaver Nelson as a consultant to prepare and put together kosher meals; after that, he was hired by food services."  *Cahill Affidavit*, ¶ 15.  *See also Gallaer Affidavit*, ¶ 17 ("Around December 2012, Plaintiff was given a job in the LOCI kitchen putting together kosher meals.  Therefore, if Plaintiff was

---

[3]In any event, isolated or sporadic incidents do not rise to the level of constitutional violations.  *See*, *e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (affirming, *inter alia*, summary judgment against certain defendants where the plaintiff "has asserted only isolated incidents of [defendants] DeShambo and Anderson serving him nonkosher food"); *Johnson v. Wilkinson*, No. 98-3866, 2000 U.S. App. LEXIS 21036, at *6-7 (6th Cir. Aug. 11, 2000) ("Although [the plaintiff] Johnson argues that the defendants' actions violated his First Amendment rights, he has, at most, set forth isolated instances of interference with prisoners' mail and only one instance that affected him.  This random and isolated interference with Johnson's mail did not violate his constitutional rights."); *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (concluding that "the unavailability of a non-pork tray for [plaintiff] at 3 meals out of 810 does not constitute more than a *de minimis* burden on [plaintiff's] free exercise of religion").

served meat and dairy together when he worked in the LOCI kitchen, he did it himself."); *Exhibit 6*, PAGEID#:659, attached to *Memo. in Opp.* (memorandum dated March 5, 2013 from Captain H. Miller, Acting Correctional Food Service Manager London Correctional Institution, advising that plaintiff "will be working within the Diet Room, for the purposes of assisting within the preparation of items for the Kosher Meal line."). Plaintiff, however, disputes that he worked with LoCI food services on the dates cited by defendants, averring instead that he worked with food services beginning on March 1, 2013 and was classified to work in LoCI's Kosher kitchen on June 11, 2013. *Reply*, p. 6 (citing *Plaintiff's December 26, 2013 Affidavit*). The Court need not resolve this dispute of fact because, taking the record as a whole, the Court cannot conclude that plaintiff is entitled to summary judgment on his First Amendment claims against defendants Gallaer and Jackson based on the service of meat and dairy in the same meal.

C.   **Cooking or Reheating Meal on the Sabbath**

Defendants also oppose plaintiff's request for summary judgment on his First Amendment claims against all three defendants based on plaintiff's complaint that he was required to cook his meal on the Sabbath. According to defendants, all Kosher meals are either pre-packaged and frozen or shelf-stable (*i.e.*, neither frozen nor refrigerated). *Gallaer Affidavit*, ¶ 10; *Jackson Affidavit*, ¶ 11; *Cahill Affidavit*, ¶ 10; *Hawkins Affidavit*, ¶ 15. Pre-packaged frozen Kosher meals are pre-cooked and need only be re-heated in a microwave oven or a conventional oven. *Id*. Defendants advance two arguments against plaintiff's request for summary judgment on this claim.

18

First, defendants claim a valid, rational connection between the prison regulation (serving frozen Kosher meals on the Sabbath) and a legitimate governmental interest (LoCI's need to maintain security and order within the prison). *Memo. in Opp.*, p. 8 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). According to defendants, the only alternative offered by plaintiff is the use of a Sabbath bag. *Id.* at 8-9 (providing no citation to the record, but apparently referring to *Exhibit B*, attached to the *Amended Complaint*, which is an email from defendant Jackson that does not recommend the use of Sabbath bags). However, defendant Jackson explained why the use of Sabbath bags would pose problems at other prisons:

> I recommended against the Sabbath bag accommodation request for a legitimate penological interest – prison security. First, the prisons held a mistaken belief that the Jewish inmates needed a Sabbath Bag because they fasted from sundown on Friday until sundown on Saturday. After consulting with Rabbis, it was understood that the Jewish inmates merely could not work on the Sabbath (sundown on Friday to sundown on Saturday); no meal fast requirement exists. Thus, providing the kosher-keeping Jewish inmates with a "final meal" bag on Friday was not necessary. Further, the reason Marion [Correctional Institution] started the Sabbath Bag practice was so that the Jewish inmates working in food services and preparing kosher meals would not be required to work on Saturday; those inmates would prepare a final meal on Friday that would carry the kosher-keeping Jewish inmates through Saturday at sundown. The Sabbath Bag caused several major security problems at the prisons: the inmates receiving the Sabbath bags would have an abundance of food at one time, which they would take back to their housing unit, and then, in violation of the prison rules, trade the food for goods or services with other inmates. In my e-mail response [apparently *Exhibit B*, attached to the *Amended Complaint*], I did not encourage or participate in any decision regarding, or even address the issue of, serving meat and dairy products together or the use of a microwave on the Sabbath.

*Jackson Affidavit*, ¶ 14. Defendants argue that prison security is not only a legitimate governmental interest but in fact is a compelling

19

governmental interest.  *Memo. in Opp.*, p. 9 (citing *Hoevenaar v.
Lazaroff*, 422 F.3d 366, 368 (6th Cir. 2005)).

Plaintiff disagrees and points to a new ODRC Kosher meal
procedure which "provides for not cooking or serving such items on the
Sabbath[.]"  *Reply*, p. 8 (citing *Hawkins Affidavit*, ¶ 6 (averring
that, since 2008, ODRC has consulted with members of the Jewish
community and, based on those discussions, the "Kosher Meal
Accommodation Procedure" was developed and distributed statewide on
July 19, 2012 "as guidance to institutions with and without kosher
meal procedures in place")).  Plaintiff also argues that Sabbath bags
are used in most prisons and represents, without evidentiary support,
that defendant Jackson permitted such bags when she was the warden of
another correctional facility.  *Id*. at 9.  *Cf*. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 256-57 (1986)(unsupported assertions are
inadmissible and will not be considered on summary judgment).

Although neither party directs the Court to the terms of a "new"
ODRC Kosher meal program, the Court notes that the *Amended Complaint*
attaches a copy of ODRC's "Kosher Meal Guideline," which apparently
became effective February 1, 2013.  *See Amended Complaint*,
PAGEID#:358; *Exhibit G*, attached thereto.  *See also* Fed. R. Civ. P.
56(c)(3).[4]  Pursuant to this guideline, Sabbath bags are provided in at
least some instances in some institutions.  *See Exhibit G*, at
PAGEID#:374, attached to *Amended Complaint* (describing contents of a
Sabbath bag and providing that "[w]hen no Sabbath bag is in practice,
the inmates will pick up meals from the dining hall on Friday

---

[4] Defendants do not appear to dispute the authenticity of this document.

evening"). In light of this evidence, the Court concludes that a genuine issue of material fact exists as to whether or not maintaining security by prohibiting Sabbath bags is a legitimate governmental interest.

Defendants also argue that plaintiff has not established a clearly established right to Kosher meals that need not be warmed in the microwave. *Memo. in Opp.*, pp. 11-12. Arguing that such a right is not clearly established, defendants first represent that "no court has determined, or even discussed, whether an inmate has the right to receive kosher meals that need not be cooked or warmed in a microwave." *Id.* at 12. Moreover, defendants argue, "there [i]s no consensus among Rabbis as to whether warming frozen kosher meals in a microwave on the Sabbath violates the tenets of the Jewish religion." *Id.* (citing *Hawkins Affidavit*, ¶ 13 ("ODRC spoke with many representatives of the Jewish community, including Rabbis, concerning this issue, and there was no consensus on whether re-heating frozen Kosher meals in a microwave on the Jewish Sabbath violates the tenets of the Jewish religion."); *Cahill Affidavit*, ¶ 9 (same)). Under these circumstances, defendants represent that neither they nor Ms. Hawkins were aware that warming frozen Kosher meals in a microwave oven violated plaintiff's religious beliefs. *Gallaer Affidavit*, ¶ 9; *Jackson Affidavit*, ¶ 10; *Cahill Affidavit*, ¶ 9; *Hawkins Affidavit*, ¶ 13.

In response, plaintiff insists that the frozen pre-cooked Kosher meals must actually be cooked in a microwave on the Sabbath, a task that is strictly prohibited by the Orthodox Jewish faith. *Reply*, p.

10.  Again, plaintiff's unsworn assertions cannot be considered on summary judgment.  Therefore, based on this record, the Court concludes that the grant of summary judgment in plaintiff's failure on these claims is inappropriate.

**VI.  RLUIPA CLAIMS**

In an abundance of caution, the Court assumes that the *Motion for Summary Judgment* includes plaintiff's claims under RLUIPA.  RLUIPA prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]"  42 U.S.C. § 2000cc-1(a).  *See also Cutter v. Wilkinson*, 544 U.S. 709 (2005) (upholding constitutionality of RLUIPA).  "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter*, 544 U.S. at 721.  However, in determining whether or not an accommodation is entitled to protection under RLUIPA, "'the sincerity of a prisoner's professed religiosity'" should be considered.  *Colvin*, 605 F.3d at 298 (quoting *Cutter*, 544 U.S. at 725 n.13).

"The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion."  *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007).  *See also Barhite v. Caruso*, No. 09-1312, 377 F. App'x. 508, at *511 (6th Cir. May 14, 2010) ("RLUIPA [ ] requires an inmate to show that his or her religious exercise [is] substantially burdened.").  A "substantial

22

burden" "force[s] an individual to choose between 'following the
precepts of [his] religion and forfeiting benefits' or when the action
in question placed 'substantial pressure on an adherent to modify his
behavior and to violate his beliefs.'" *Hayes v. Tennessee*, No. 09-
5529, 424 Fed. Appx. 546, at *555 (6th Cir. June 1, 2011) (quoting
*Barhite*, 377 F. App'x at 511).

A plaintiff bears the initial burden of establishing that the
challenged action "substantially burdens the plaintiff's exercise of
religion."  42 U.S.C. § 2000cc-2(b); *Hayes*, 424 Fed. Appx. 546, at
*554 ("An inmate asserting a claim under the RLUIPA must first produce
prima facie evidence demonstrating that his religious exercise was
substantially burdened.").  If the plaintiff carries this burden, the
government must then establish that that substantial burden is the
least restrictive means of furthering a compelling governmental
interest.  42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b).  *See also Hayes*, 424
Fed. Appx. 546, at *555.

As an initial matter, defendants argue that the United States
Court of Appeals for the Sixth Circuit does not authorize a claim for
damages against defendants in their individual capacities under
RLUIPA.  *Memo. in Opp.*, p. 14.  Defendants, however, cite to no
authority for this proposition.  *See id.*  Moreover, it does not appear
that the Sixth Circuit has ruled on this issue.  *See*, *e.g.*, *Selby v.
Caruso*, 734 F.3d 554, 561 (6th Cir. 2013) ("Finally, our court has not
ruled on whether RLUIPA authorizes a prisoner to pursue damages
against prison officials who are sued in their individual capacities,
*see Heard v. Caruso*, [Nos. 08-1710/08-1779/08-1820,] 351 F. App'x 1,

23

13 n.5 (6th Cir. [Aug. 27,] 2009), but we need not resolve that issue here."). Accordingly, defendants' opposition to the *Motion for Summary Judgment* on this basis is not well-taken.

Plaintiff alleges that defendants Gallaer and Jackson violated his rights under RLUIPA by serving him meat and dairy at the same meal and that all defendants violated these rights by requiring plaintiff to cook his meal on the Sabbath. For the reasons that follow, however, plaintiff's request for summary judgment on these claims is not well-taken. As discussed *supra*, a genuine issue of fact remains as to the sincerity of plaintiff's professed religious beliefs in this regard. Even assuming this sincerity, however, in moving for summary judgment, plaintiff does not specifically explain how these actions substantially burden the exercise of his Jewish faith.

Moreover, the present record establishes, at most, only that plaintiff was served meat and dairy together on "more than a few occasions" since February 2010. Even accepting plaintiff's vague allegations in this regard, it appears that plaintiff was served the combined meat and dairy on only random occasions in the last three or four years. However, isolated or sporadic instances over the course of years do not qualify as a "substantial burden" for purposes of RLUIPA. *See*, *e.g.*, *Taylor v. Bay*, No. C 07-639, 2010 U.S. Dist. LEXIS 65996, at *21-22 (July 2, 2010) (stating, *inter alia*, that "relatively short-term and sporadic intrusions" do not constitute a substantial burden under the First Amendment or RLUIPA) (citations and internal quotation marks omitted); *Jihad*, 680 F. Supp. 2d at 1033 (finding that the "occasional cancellation" of religious services did not violate

24

RLUIPA); *Greenberg v. Hill*, No. 2:07-CV-1076, 2009 U.S. Dist. LEXIS 28027, at *20 (S.D. Ohio Mar. 31, 2009) ("However, isolated or sporadic government action or omission is *de minimis* and does not constitute a 'substantial burden.'").

In addition, as discussed *supra*, there is evidence in the record that serving meat and dairy together during the same meal was an accident and that the named defendants were unaware that requiring plaintiff to use a microwave oven on the Sabbath violated plaintiff's religious beliefs. Accidental, unintentional or negligent actions that may intrude on religious beliefs are not actionable under RLUIPA. *See*, *e.g.*, *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006) ("[S]imple negligence, the 'lowest common denominator of customary tort liability,' does not suffice to meet the fault requirement under section 3 of RLUIPA.") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)); *Carter v. Wash. Dep't of Corr.*, No. C11-5626, 2013 U.S. Dist. LEXIS 36367, at *40 (W.D. Wa. Feb. 27, 2013) ("Officials' accidental or negligent actions that impinge to some degree on an inmate's religious practice are insufficient to support an actionable constitutional claim or RLUIPA claim."); *Greenberg*, 2009 U.S. Dist. LEXIS 28027, at *21 ("[N]egligence is not actionable under RLUIPA.") (citing *Lovelace*, 472 F.3d at 194)); *Odom v. Dixion*, 04-CV-889F, 2008 U.S. Dist. LEXIS 11748, at *35-36 (W.D. N.Y. Feb. 15, 2008) (stating that an "unintentional deprivation" was not actionable under the First Amendment or RLUIPA). For all these reasons, then, summary judgment in plaintiff's favor on these claims is not appropriate.

## VII.  EIGHTH AMENDMENT CLAIMS

Plaintiff alleges that defendants Gallaer and Jackson violated his Eighth Amendment rights by serving him meat and dairy together in the same meal and when all the defendants required plaintiff to cook his meal on the Sabbath, resulting in weight loss for plaintiff.  The United States Court of Appeals for the Sixth Circuit has previously held that "the deliberate and unnecessary withholding of food that is essential to normal health can constitute the deliberate indifference to medical needs that violates the Eighth Amendment." *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (citing *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977)).  Deliberate indifference in violation of the Eighth Amendment contains both a subjective and an objective component.  *Farmer v. Brennan*, 511 U.S. 825, 835-57 (1994).  A deprivation satisfies the objective component if it is "sufficiently serious." *Id.* at 834.

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Here, defendants contend that any weight loss experienced by plaintiff is *de minimis* and insufficient to constitute the physical

26

injury necessary to an Eighth Amendment claim.  *Memo. in Opp.*, pp. 18-20.  Noting that the Prison Litigation Reform Act ("PLRA") requires inmates to have suffered a physical injury before recovering monetary damages, defendants argue that courts have held that weight loss in the prison setting is generally not considered an actionable physical injury.  *Id.* at 18 (collecting cases).  Defendants go on to chronicle plaintiff's weight:

> 12/31/09 – 216.2 lbs (upon entering prison)
>
> 4/31/10 – 216.2 lbs
>
> 8/21/11 – 226   lbs
>
> 1/16/12 – 222   lbs
>
> 3/30/12 – 233   lbs
>
> 5/17/12 – 255.5 lbs
>
> 6/20/12 – 247   lbs
>
> 8/17/12 – 254   lbs (transfer to LOCI)
>
> 9/25/12 – 238   lbs
>
> 11/26/12 – 225  lbs
>
> 12/10/12 – 224.4 lbs
>
> 3/10/13 – 222   lbs (3/18/13 amended complt. filed)

*Id.* at 19 (citing *Exhibit 5*, prison medical records Bates Numbers 001 through 023, attached thereto).[5]  Defendants go on to argue that "Plaintiff lied about his weight as of March 9, 2013: he did not weigh 192 pounds,[6] he weighed 222 pounds."  *Id.*  Defendants therefore

---

[5] Robin Murphy, ODRC's Health Care Administrator at LoCI, authenticated the attached records.  *Affidavit of Robin Murphy*, ¶¶ 2-3 ("*Murphy Affidavit*"), attached as *Exhibit 5* to *Reply*.

[6] The *Amended Complaint*, which is not verified, alleges that plaintiff weighed 192 pounds as of March 9, 2013.  *Amended Complaint*, ¶ 42.

calculate that plaintiff lost 32 pounds between August 17, 2012 and
March 9, 2012. *Id*. Defendants also point out that plaintiff's weight
as of March 2013 (222 pounds) is still greater than his weight when he
entered prison (216.2 pounds) and that his body mass index (23.6%) is
within normal range and proportionate to his height. *Id*. (citing
*Exhibit 5*, attached thereto). Defendants suggest that plaintiff's
weight loss was a matter of choice when he decided to become a
vegetarian and refused to eat meat. *Id*. at 19-20 (citing *Exhibit 6*
attached thereto; *Cahill Affidavit*, ¶ 19).

Plaintiff, however, argues that his weight loss satisfies the
physical injury requirement because he lost 62 pounds in six months.
*Reply*, pp. 4-5 (citing cases and *Murphy Affidavit*, ¶ 4). In support,
plaintiff agrees that he weighed 254 pounds upon entering LoCI on
August 17, 2012. *Id*. at 6 (citing *Exhibit 5*, attached to *Memo. in
Opp.*). Plaintiff, however, argues that the record supports his
allegation that he weighed 192 pounds on March 19, 2013. *Id*. (citing
*Murphy Affidavit*, ¶ 4). Plaintiff denies that the weight loss was due
to a vegan diet, noting that he did not request a vegan accommodation
until May 23, 2013. *Id*. (citing *Exhibit 6*, prison records, attached
to *Memo. in Opp.*).

As noted *supra*, the PLRA requires that a prisoner have suffered a
physical injury before recovering monetary damages in a federal civil
action. *Yaacov v. Collins*, No. 09-4148, 2010 U.S. App. LEXIS 27719,
at *10 (6th Cir. Dec. 1, 2010) (citing 42 U.S.C. § 1997e(e)).
Although the required physical injury "need not be significant, it
must be more than *de minimis* for an Eighth Amendment claim to go

forward." *See*, *e.g.*, *Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005).  An inmate's diet and weight loss may, under some circumstances, constitute an actionable physical injury.  *Cf. Colvin*, 605 F.3d at 290 ("'[P]rison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions.'") (quoting *Alexander v. Carrick*, No. 00-1261, 31 F. App'x 176, at *179 (6th Cir. Mar. 19, 2002)); *Alexander*, 31 Fed. Appx. 176, at *179 ("For the inmate, this is essentially a constitutional right not to eat the offending food item.  If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated."); *Ward v. Gooch*, 5:07-CV-389, 2010 U.S. Dist. LEXIS 118566 (E.D. Ky. Nov. 5, 2010) (finding that evidence that inmate lost 68 pounds over 10 month period and received 200-700 calories a day for almost a year was sufficient to raise genuine issue of material fact on the plaintiff's Eighth Amendment claim).

Here, the record is unclear as to plaintiff's weight in March 2013.  *See Murphy Affidavit*, ¶ 4 (averring that plaintiff weighed 192 pounds on March 19, 2013); *Exhibit 5*, Bates Number 022 (stating that plaintiff weighed 222 pounds on March 10, 2013).  The Court cannot, therefore, reliably determine how much weight plaintiff lost while at LoCI.  It follows, then, that the Court cannot, on this record, conclude that plaintiff has suffered an actionable physical injury under the Eighth Amendment. Because there remain genuine issues of material fact on this claim, the Court concludes that the grant of

summary judgment on this record is inappropriate.[7]

## VIII. REMAINING CLAIMS

Although plaintiff also asserts violations under 42 U.S.C. §§ 1985, 1988, 2000d, the *Motion for Summary Judgment* does not address these claims.  Those claims therefore also remain pending.


**WHEREUPON**, it is **RECOMMENDED** that *Plaintiff's Motion for Summary Judgment*, Doc. No. 42, be **DENIED**.  It is **FURTHER RECOMMENDED** that, based upon the agreement of the parties, that plaintiff's claims for injunctive relief be **DISMISSED as moot.**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States*

---

[7] On January 14, 2014, defendants moved to file under seal a corrected affidavit of Robin Murphy, representing that paragraph 4 of Ms. Murphy's previously filed affidavit contained an error regarding plaintiff's weight and height.  Doc. No. 80.  That motion is not yet ripe for resolution.

*v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 15, 2014                              *s/Norah McCann King*
                                             Norah McCann King
                                      United States Magistrate Judge