IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSHUA COPENHAVER NELSON,

                Plaintiff,

   vs.                               Civil Action 2:12-cv-1167
                                            Judge Graham
                                            Magistrate Judge King

WANZA JACKSON, *et al.*,

                Defendants.

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, a former inmate at the London Correctional Institution ("LoCI") and current inmate at the Marion Correctional Institution ("MCI"),[1] brings this civil rights action under 42 U.S.C. § 1983 claiming a denial of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution in connection with the alleged denial of Kosher meals, service of non-Kosher food products and other alleged service problems with his meals at LoCI. *Plaintiff's First Amended Complaint and Jury Demand*, ECF 32 ("*Amended Complaint*"). Plaintiff also asserts violations under 42 U.S.C. §§ 1985, 1988, 2000d and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). *Id*. This matter is before the Court on *Defendants Wanza Jackson, Steven Cahill, and William Gallaer's Motion for Summary Judgment*, Doc. No. 92 ("*Motion for Summary Judgment*"). For the reasons that follow, it is **RECOMMENDED** the *Motion for Summary Judgment* be **GRANTED**.

---

[1] *See Notice of Change of Address*, Doc. Nos. 47, 49.

## I.   BACKGROUND

Plaintiff has been deemed "sincerely Jewish" for purposes of participating in the Kosher meal program of the Ohio Department of Rehabilitation and Corrections ("ODRC") since February 25, 2010. *Exhibit A* ("*Response to Request for Religious Accommodation,*" stating that "Mr. Copenhaver checks out as being <u>sincerely Jewish</u>. I talked with his Rabbi in Michigan.") (emphasis in original)), attached to *Amended Complaint*, Doc. No. 32.[2]

Plaintiff alleges that he was served meat and dairy products during the same meal and was required to cook or reheat his meal in a microwave on the Sabbath, all in violation of his religious beliefs. *Id*. at ¶¶ 24-27. Named as defendants in the action are William Gallaer, LoCI's former Food Service Manager,[3] Wanza Jackson, the Religious Services Administrator for the Ohio Department of Rehabilitation and Corrections ("ODRC"), and Steven Cahill, LoCI's Chaplain, in their official and individual capacities. *Id*. at ¶¶ 10-16. Plaintiff seeks monetary relief. *Id*. at ¶¶ 45-49.[4]

On August 20, 2013, the Court granted in part and denied in part defendants' motion to dismiss. *Order*, Doc. No. 48. More specifically, the Court denied the motion to dismiss as to the following claims: (1) plaintiff's claims against all defendants under

---

[2] Exhibit A is not authenticated. However, defendants do not challenge the authenticity of this document and in fact refer to it in their *Motion for Summary Judgment*, p. 2. Under these circumstances, and because the Court concludes that no gross miscarriage of justice will result, the Court will consider this exhibit in connection with the *Motion for Summary Judgment*. *Cf*. *Johnson v. United States Postal Serv*., 64 F.3d 233, 237 (6th Cir. 1995).

[3] This defendant is variously referred to as "William Gallar" and "William Gallaer."

[4] The Court previously dismissed as moot plaintiff's claims for injunctive relief. *Order*, Doc. No. 88.

the Equal Protection Clause and 42 U.S.C. §§ 1985, 1988 and 2000d; (2) plaintiff's claims under the First and Eighth Amendments and RLUIPA against defendants Gallaer and Jackson based on the service of meat and dairy at the same meal and requiring plaintiff to cook his meal on the Sabbath; (3) plaintiff's claims under the First and Eighth Amendments and RLUIPA against defendant Cahill based on requiring plaintiff to cook his meal on the Sabbath; and (4) claims against defendants in their official capacities for prospective injunctive relief. *Id*. at 2. The Court later denied plaintiff's motion for summary judgment on these claims. *Order*, Doc. No. 88.

Defendants now move for summary judgment on the remaining claims. *Motion for Summary Judgment*. Plaintiff opposes defendants' motion. *Plaintiff's Opposition to Defendants' Motion for Summary Judgment*, Doc. No. 93 ("*Plaintiff's Opposition*"). With the filing of *Defendants Wanza Jackson, Steven Cahill, and William Gallaer's Reply in Support of Motion for Summary Judgment*, Doc. No. 94 ("*Reply*"), this matter is ripe for resolution.

## II.    STANDARD

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment

will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323.  Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations.  It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway*

4

*Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  Instead, the non-moving party must support the assertion that

a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is

not ... obligated to wade through and search the entire record for

some specific facts that might support the nonmoving party's claim."

*Glover,* 284 F. Supp.2d at 862 (citing *InteRoyal Corp. v. Sponseller,*

889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to

rely, in determining whether a genuine issue of material fact exists

on a particular issue, only upon those portions of the verified

pleadings, depositions, answers to interrogatories and admissions on

file, together with any affidavits submitted, specifically called to

its attention by the parties."  *Id. See also* Fed. R. Civ. P. 56(c)(3).

### III. EQUAL PROTECTION CLAIMS

Plaintiff alleges that he "has been denied fresh fruit other than

apples[.]"  *Amended Complaint*, ¶ 31.  Defendants construe this

allegation to mean that defendants violated plaintiff's rights under

the Equal Protection Clause "because [plaintiff] was provided only

apples to eat while other inmates were provided a variety of fresh

fruit."  *Motion for Summary Judgment*, p. 23.  Defendants argue that

they are entitled to summary judgment on this claim because (1) the

Court has previously found that "there is no evidence that plaintiff

was victimized because of his membership in a suspect class[,]" *id*.

(quoting *Report and Recommendation*, Doc. No. 81, p. 6); (2) the Court

has already concluded that an alleged failure to provide fresh fruit

other than apples does not rise to the level of a constitutional violation, *id.* (citing *Order and Report and Recommendation*, Doc. No. 45, p. 28); and (3) plaintiff had access to the same fruit as all inmates at LoCI, *id.* (citing *Affidavit of William Gallaer*, ¶ 13 ("*Gallaer Affidavit*"); *Affidavit of Steven Cahill*, ¶ 25 ("*Cahill Affidavit*"), attached as *Exhibits 1* and *3* to *Motion for Summary Judgment*). Plaintiff concedes that defendants are entitled to summary judgment on this claim. *Plaintiff's Opposition*, p. 16. Accordingly, as it relates to plaintiff's Equal Protection claim, the *Motion for Summary Judgment* is well-taken.

**IV. FIRST AMENDMENT CLAIMS**

Plaintiff alleges that defendants Gallaer and Jackson violated plaintiff's rights under the First Amendment by serving him meat and dairy products at the same meal and by requiring plaintiff to cook or reheat meals on plaintiff's Sabbath. *Amended Complaint*, ¶¶ 24-27.

The First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const., Amend. 1. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, No. 09-5529, 424 F. App'x. 546, 549 (6th Cir. June 1, 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). Under § 1983, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must [first] show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Flagner v. Wilkinson*, 241

F.3d 475, 481 (6th Cir. 2001) (citation and internal quotation marks omitted).

"Only after a prison inmate shows a sincere belief that his or her religion requires the practice at issue does the court move on to determining whether the prison's actions restricting the practice are valid." *Barhite v. Caruso*, No. 09-1312, 377 F. App'x. 508, at *510 (6th Cir. May 14, 2010) (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). "It is well-settled that prisoners' rights under the Free Exercise Clause [of the First Amendment] may be subject to reasonable restrictions." *Weinberger v. Grimes*, No. 07-6461, 2009 U.S. App. LEXIS 2693, at *9 (6th Cir. Feb. 10, 2009) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995)). Prisoners' First Amendment rights are "not violated if the challenged policies [are] reasonably related to legitimate penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)). Finally, courts accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002).

### A. Sincerely Held Beliefs

In addressing defendants' motion to dismiss, the Court previously noted that the defendants did not challenge plaintiff's invocation of Judaism as his sincerely held belief or his claim that his practice of the Jewish faith requires that plaintiff keep Kosher. *Order and*

7

*Report and Recommendation*, Doc. No. 45, pp. 12-13. Under those circumstances, for purposes of that motion, the Court accepted that plaintiff's religious belief was sincerely held and that his practice of Judaism requires the observance of certain dietary restrictions. *Id*. at 13.

Now, however, defendants argue that plaintiff's claimed belief that he cannot heat his meals in a microwave on the Sabbath and his claimed belief in keeping Kosher are not sincerely held. *Motion for Summary Judgment*, p. 11. In support, defendants offer the same arguments and evidence previously submitted to the Court in opposing plaintiff's motion for summary judgment. *Compare id*. at 11-13, *with* Doc. No. 76, pp. 10-11. For the reasons previously detailed, *see Report and Recommendation*, Doc. No. 81, pp. 9-13, the Court concludes that there exists a genuine issue of material fact as to whether plaintiff's claimed beliefs regarding the re-heating of food in a microwave on the Sabbath and keeping Kosher are sincerely held.

## B. Meat and Dairy Served Together

Assuming for present purposes only that these beliefs are sincerely held, the Court will proceed to consider plaintiff's First Amendment claims, asserted against defendants Gallaer and Jackson,[5] that these defendants served plaintiff meat and dairy at the same meal. Defendants argue that they are entitled to summary judgment on

---

[5] Plaintiff apparently believes that his First Amendment claim against defendant Cahill for allegedly serving meat and dairy together at the same meal remains pending. *Plaintiff's Opposition*, pp. 6-7, 14. Plaintiff is mistaken. The Court previously dismissed this claim against defendant Cahill. *See Order and Report and Recommendation*, Doc. No. 45, pp. 32-33, 41; *Order*, Doc. No. 48 (adopting and affirming *Report and Recommendation*, Doc. No. 45).

these claims, denying that they violated plaintiff First Amendment rights and claiming qualified immunity. *Motion for Summary Judgment*, pp. 7-17.

The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials performing discretionary functions are generally shielded from liability "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established[,]" *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)), such that a "'reasonable official would understand that what he is doing violates that right.'" *Simmonds v. Genesee County*, 682 F.3d 438, 443-44 (6th Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Stated differently, plaintiff must demonstrate that "a constitutional right was violated and that the right was clearly established at the time of the violation." *Id*. A court may exercise discretion in determining which prong of the test it will first address in light of the circumstances of the case. *Pearson*, 555 U.S.

at 236.

In the case presently before the Court, plaintiff offers evidence that he and other inmates were served meat and dairy together at the same meal. *See Plaintiff's Opposition*, p. 13 (citing *Affidavit of Joshua A. Copenhaver Nelson*, ¶ 5 ("Upon beginning the Kosher Meal(s) I was served Meat and Dairy together, in violation of Kosher law. This is found within the laws of Kashruth, and the Torah at the Book of Leviticus."), dated October 5, 2012, attached as *Exhibit H* to the *Amended Complaint* ("*Plaintiff's October 2012 Affidavit*"). *See also id.* at 14 (citing *Plaintiff's October 2012 Affidavit*; *Affidavit of Joshua A. Copenhaver Nelson*, dated February 25, 2013, attached as *Exhibit Q* to the *Amended Complaint* ("*Plaintiff's February 2013 Affidavit*"); *Affidavit of Monroe Williams*, attached as *Exhibit J* to the *Amended Complaint* ("*Williams Affidavit*"); *Affidavit of Charles Mason*, attached as *Exhibit K* to the *Amended Complaint* ("*Mason Affidavit*"); *Affidavit of Antone Singletary*, attached as *Exhibit L* to the *Amended Complaint* ("*Singletary Affidavit*").

However, defendants Gallaer and Jackson deny that they prepared meals for plaintiff, explaining that it was inmate staff who assembled the Kosher meals. *Motion for Summary Judgment*, p. 13 (citing *Gallaer Affidavit*, ¶¶ 12, 15-16, 18-19; *Affidavit of Wanza Jackson*, ¶¶ 5, 12, 16-17, attached as *Exhibit 2* to *Motion for Summary Judgment* ("*Jackson Affidavit I*"). Plaintiff nevertheless insists that defendants Gallaer and Jackson are responsible for serving meat and dairy together at the same meal. *Plaintiff's Opposition*, pp. 2, 6-7, 12-15, 18. First, plaintiff contends that defendant Gallaer is responsible for this

10

violation because he supervised the kitchen and dining hall, *id*. at 2 (quoting *Gallaer Affidavit*, ¶ 5), and because defendant Gallaer selected an inmate, "Offender Moore, #438521," to prepare Kosher meals and that defendant Gallaer did nothing even when he knew that Inmate Moore served meat and dairy together in the same meal, *id*. at 2, 6, 12-13. These arguments are unavailing. Plaintiff's assertions regarding Inmate Moore are not made under penalty of perjury and are therefore not evidence to be considered on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (unsupported assertions are inadmissible and will not be considered on summary judgment). Moreover, absent active unconstitutional behavior, simply supervising the kitchen and dining hall cannot form a basis for finding a constitutional violation by the supervisor. *See*, *e.g.*, *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) ("Supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior.").

     In addition, although it is not immediately clear, plaintiff also apparently argues that defendant Jackson violated plaintiff's rights in this regard because she recommended that Inmate Moore be placed on the Kosher diet line and that "Gallaer acted under direction of Jackson" when serving meat and dairy together. *Plaintiff's Opposition*, pp. 2, 12, 14-15. Plaintiff's factual assertions to this effect are not evidence; they are not made under penalty of perjury and will therefore not be considered at the summary judgment stage. *See*, *e.g.*, *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("'[A] court may not consider unsworn statements when

11

ruling on a motion for summary judgment.'") (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)). Plaintiff also directs the Court to an email exchange between defendants Cahill and Jackson dated August 28, 2012, apparently to establish that defendant Jackson purposely served meat and dairy together at the same meal. *Plaintiff's Opposition*, pp. 14-15 (citing *Exhibit B*[6] (containing copy of email string containing two messages (1) an email dated August 28, 2012 from defendant Cahill to defendants Jackson and Gallaer and other individuals stating, *inter alia*, "A few of our Jewish and Sabbatarian inmates have said that meals are being served with both meat and dairy products which makes the meal non-kosher" and that "they say they are not allowed to eat food prepared on the Sabbath or microwaved on the Sabbath. To correct the Sabbath problem they are requesting a sack meal on Friday evening. Is there a problem with providing this sack meal in place of Saturday meals?" and (2) an email dated August 28, 2012 from defendant Jackson to defendant Cahill with copy to defendant Gallaer, responding that "Chaplain, Vivian Hawkins provided guidelines to the food service manager. Do not change your meal schedule for the Sabbath issue. It is not a recommended practice department-wide. Marion started this practice - but I do not recommend it!"), attached to *Amended Complaint*). This exchange, however, does not establish that defendant Jackson engaged in active unconstitutional behavior regarding serving meat and dairy

---

[6] *Exhibit B* is not authenticated. However, defendants again do not challenge the authenticity of this document and cite to it in their *Motion for Summary Judgment*, p. 14. The Court will therefore consider the exhibit in connection with the *Motion for Summary Judgment*. *Cf. Johnson v. United States Postal Serv.*, 64 F.3d at 237.

together at the same meal. Therefore, taking the evidence as a whole, the Court concludes that nothing offered by plaintiff controverts defendants' evidence that it was inmate staff, rather than defendants Gallaer and Jackson, who physically assembled Kosher meals.

Second, defendants represent that meat and dairy were not purposely or even recklessly served together in Kosher meals. *Gallaer Affidavit*, ¶¶ 15-16, 18 (denying, *inter alia*, that he or anyone else purposely or recklessly served meat and dairy together); *Jackson Affidavit I*, ¶¶ 12, 15-17 (averring that she was unaware that plaintiff was served meat and dairy together and denying that she ordered or encouraged anyone else to do so); *Cahill Affidavit*, ¶ 13 (denying that meat and dairy were purposely or recklessly served together at the same meal). According to defendants, "[s]ometimes a new inmate food service staff would put together the kosher meals and make a mistake. They put together a couple hundred meals a day, including medical meal bags, etc." *Gallaer Affidavit*, ¶ 15. *See also Cahill Affidavit*, ¶ 14 ("This [serving the two foods together] might occur when a new inmate was substituted in for the regular inmate preparing kosher meals."). Defendants therefore represent that, if meat and dairy were served together to plaintiff, that event was simply an accident. *See Cahill Affidavit* ¶ 13.

Plaintiff apparently disagrees, representing that defendants Gallaer and Jackson permitted Inmate Moore, who understood the laws of Kosher, to work in the LoCI kitchen even after they learned that Inmate Moore served meat and dairy together. *Plaintiff's Opposition*, pp. 2, 6. However, these unsworn factual assertions may not be

considered on summary judgment. *See*, *e.g.*, *Harris*, 627 F.3d at 239 n.1. Therefore, defendants' evidence that meat and dairy were not recklessly or purposely served together in Kosher meals is uncontroverted.

Third, defendants proffer that any instances of serving meat and dairy together were isolated mistakes, which were immediately rectified upon notification. *Cahill Affidavit*, ¶¶ 13 (representing that plaintiff complained about this happening "one or two times" and that it "occurred only a few times"), 14 ("Upon being notified that meat and dairy were served together in a kosher meal, employees of LoCI and I would immediately rectify the situation and stop that from happening."). Plaintiff disagrees, arguing that he and other inmates were "routinely served meat and dairy together." *Plaintiff's Opposition*, p. 14. However, the evidence upon which plaintiff relies does not establish that he and other were "routinely served meat and dairy together"; instead, these cited sources simply show that at some point on at least one occasion meat and dairy were served together at LoCI on some unspecified occasion. *See*, *e.g.*, *Plaintiff's October 2012 Affidavit*, ¶ 5 ("Upon beginning the Kosher Meal(s) I was served Meat and Dairy together, in violation of Kosher law."); *Williams Affidavit*, ¶ 4 ("During the course of my being on the Kosher diet [since at least 2011], I have been served meat and dairy items together"); *Mason Affidavit*, ¶ 4 ("While on the Kosher meal program [since at least 2009], I have been served meat and dairy items together"); *Singletary Affidavit*, ¶ 6 ("During the course of my being active on the kosher diet [since at least April 2012]; I have been

14

served meat and dairy items together"). Moreover, plaintiff points to no evidence and cites to no authority in contesting defendant Cahill's representation that isolated violations were rectified immediately,. *See Plaintiff's Opposition*, p. 14. Accordingly, the *Cahill Affidavit* is uncontroverted.

Finally, defendants suggest that missteps in serving Kosher food might also be attributable to plaintiff himself. *Gallaer Affidavit*, ¶ 17; *Cahill Affidavit*, ¶ 15; *Exhibit 6*, PAGEID#:659, attached to *Memo. in Opp.* According to defendants, "[a]round November or December 2012, food services began using Joshua Copenhaver Nelson as a consultant to prepare and put together kosher meals; after that, he was hired by food services." *Cahill Affidavit*, ¶ 15. *See also Gallaer Affidavit*, ¶ 17 ("Around December 2012, Plaintiff was given a job in the LOCI kitchen putting together kosher meals. Therefore, if Plaintiff was served meat and dairy together when he worked in the LOCI kitchen, he did it himself."). Plaintiff, however, denies that he worked with LoCI food services on the dates cited by defendants, averring instead that he worked with food services from June 11, 2013 through August 12, 2013. *Affidavit of Plaintiff Joshua Copenhaver Nelson in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment*, ¶ 3, attached as *Exhibit 2* to *Plaintiff's Opposition* ("*Plaintiff's March 21, 2014 Affidavit*"). The Court need not address this dispute of fact because, taking the record as a whole, the Court concludes that defendants are entitled to summary judgment on plaintiff's First Amendment claims against defendants Gallaer and Jackson based on the service of meat and dairy in the same meal.

### C.     Cooking or Reheating Meal on the Sabbath

Defendants also seek summary judgment on plaintiff's First Amendment claims against defendants Gallaer, Jackson and Cahill based on plaintiff's assertion that he was required to cook his meal on the Sabbath.  According to defendants, all Kosher meals are either pre-packaged, pre-cooked and frozen or shelf-stable.  *Gallaer Affidavit*, ¶ 10; *Jackson Affidavit I*, ¶ 11; *Cahill Affidavit*, ¶ 10; *Affidavit of Vivian Hawkins*, ¶ 15, attached as *Exhibit 4* to *Motion for Summary Judgment* ("*Hawkins Affidavit*").[7]  The pre-packaged frozen Kosher meals are pre-cooked and need only be re-heated in a microwave oven or a conventional oven.  *Id.*

In moving for summary judgment on this claim, defendants advance two arguments.  First, defendants contend that plaintiff has not demonstrated a clearly established right to Kosher meals that need not be warmed in the microwave.  *Motion for Summary Judgment*, pp. 13-14.  Defendants first represent that "no court has determined, or even discussed, whether an inmate has the right to receive kosher meals that need not be cooked or warmed in a microwave."  *Id.* at 14.  Moreover, defendants argue, "there [i]s no consensus among Rabbis as to whether warming frozen kosher meals in a microwave on the Sabbath violates the tenets of the Jewish religion."  *Id.* (citing *Hawkins Affidavit*, ¶ 13 ("ODRC spoke with many representatives of the Jewish community, including Rabbis, concerning this issue, and there was no consensus on whether re-heating frozen Kosher meals in a microwave on the Jewish Sabbath violates the tenets of the Jewish religion.");

---

[7]Ms. Hawkins is ODRC's Food Service Administrator.  *Hawkins Affidavit*, ¶ 4.

*Cahill Affidavit*, ¶ 9 (same)).  Under these circumstances, defendants
represent that neither they nor Ms. Hawkins were aware that warming
frozen Kosher meals in a microwave oven violated plaintiff's religious
beliefs.  *Gallaer Affidavit*, ¶ 9; *Jackson Affidavit I*, ¶ 10; *Cahill
Affidavit*, ¶ 9; *Hawkins Affidavit*, ¶ 13.

In response, plaintiff insists that his Orthodox Jewish faith
prohibits using a microwave on the Sabbath to warm the frozen pre-
cooked Kosher meals.  *Plaintiff's Opposition*, pp. 3, 6, 16 (citing
*Plaintiff's March 21, 2014 Affidavit*).  More specifically, plaintiff
does not dispute that the meals were pre-cooked or Kosher, but he
complains that the meals were frozen:

> 3.    I was employed in the LOCI Food Service Area from June
> 11, 2013 through August 12, 2013.

> \*               \*               \*               \*

> 6.    Entrees when they were delivered to London from the
> Central Warehouse, were stored in the "Manager's Cooler" in
> the rear of the London facility food service area.  The
> temperature of this cooler is routinely between 27 and 33
> degree Fahrenheit.  The entrees were frozen or close to it,
> when shipped or stored.

> 7.    When the kosher meals were packaged together (all
> meals with the side dishes) these are then stored in a
> walk-in cooler generally for about 12 hours, prior to
> service to general population offenders.  The temperature
> of this is roughly thirty-five degrees, because it is
> utilized to store milk.

*Plaintiff's March 21, 2014 Affidavit*, ¶¶ 3, 6-7.  According to
plaintiff, "cooking with a flame (electric or gas) is a clearly
established practice prohibited by his religion." *Plaintiff's
Opposition*, p. 3.  *See also id*. at 6 (citing, generally "Shulchan
Orech").  *See also id*. at 16 ("[T]here is an inherent necessity to not
cook items on the Sabbath.") (no citation to authority).  These

17

assertions, however, are not sworn. As discussed *supra*, an unsworn factual assertion may not be considered on summary judgment. *See*, *e.g.*, *Harris*, 627 F.3d at 239 n.1.

Moreover, the Court is not persuaded that the right to a Kosher meal that need not be warmed in a microwave is a clearly established right. As discussed *supra*, plaintiff has the burden of showing, *inter alia*, that the constitutional right purportedly violated was "clearly established at the time of the violation." *Chappell v. City of Cleveland*, 585 F.3d at 907. "To determine whether a right was clearly established for purposes of qualified immunity, this court 'looks first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'" *Key v. Grayson*, 179 F.3d 996, 999-1000 (quoting *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 579 (6th Cir. 1997)). "If reasonable officials could disagree on the issue, immunity should be recognized." *Id*. at 1000. "'For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.'" *Id*. (quoting *Saylor v. Board of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997)).

In the present case, the Court, like defendants, *see Motion for Summary Judgment*, p. 14, has not located any federal court decision that concludes that - or even addressed - whether an inmate has a clearly established right to receive pre-cooked Kosher meals that need

18

not be warmed in the microwave. Instead, alleged violations involving Kosher meals in the prison context do not reflect a problem with the fact that the meals are frozen, but instead relate to some other alleged deficiency with the meal. *See*, *e.g.*, *Yoshiyah v. Norris*, No. 5:09-cv-00117, 2010 U.S. Dist. LEXIS 14386, at *7, 17-18 (E.D. Ark. Jan. 28, 2010)(noting plaintiff's evidence that the Kosher meals were frozen vegetarian or soy-based meals, but rejecting plaintiff's constitutional complaints that the meals were vegetarian). Because the case authority does not establish that an inmate's right to a Kosher meal that does not need to be warmed in a microwave was so clearly established that an official reasonably would believe that not providing such a meal is unconstitutional, plaintiff has failed to meet his burden in this regard.

Defendants go on to reject plaintiff's contention that they must supply him with a "Sabbath bag" in place of the prepackaged Kosher meals on the Sabbath, claiming a valid, rational connection between the prison regulation or practice (serving frozen Kosher meals on the Sabbath) and a legitimate governmental interest (ODRC's interest in a simplified food service operation as well as LoCI's need to maintain security and order within the prison). *Motion for Summary Judgment*, pp. 14-15 (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78 (1987)). According to defendant Jackson, "[c]oordinating special Sabbath Bags for Jewish inmates and the expected converts would create a logistical nightmare." *Affidavit of Wanza Jackson*, ¶ 8, Doc. No. 92-8 ("*Second Jackson Affidavit*"). Defendant Jackson explains that "providing an identifiable religious group with what will be perceived as a special

meal will create this 'have/have not' situation." *Id.* at ¶ 10.  This

situation creates tension that often leads to violence:

> Any time an inmate, or group of inmates, is accorded
> special status, or is perceived by other inmates to be
> accorded such status, other inmates will also want that
> status.  This creates what prison administrators call a
> 'have/have not' situation, which breeds resentment within
> the population and adversely impacts prison morale.  The
> 'have/have not' situation inevitably creates tension
> amongst the inmates and theft, and frequently leads to
> extortion and violence.

*Id.* at ¶ 9.  Defendant Jackson goes on to explain why the use of

Sabbath bags would pose problems at prisons:

> I recommended against the Sabbath bag accommodation request
> for a legitimate penological interest – prison security.
> First, the prisons held a mistaken belief that the Jewish
> inmates needed a Sabbath Bag because they fasted from
> sundown on Friday until sundown on Saturday.  After
> consulting with Rabbis, it was understood that the Jewish
> inmates merely could not work on the Sabbath (sundown on
> Friday to sundown on Saturday); no meal fast requirement
> exists.  Thus, providing the kosher-keeping Jewish inmates
> with a "final meal" bag on Friday was not necessary.
> Further, the reason Marion [Correctional Institution]
> started the Sabbath Bag practice was so that the Jewish
> inmates working in food services and preparing kosher meals
> would not be required to work on Saturday; those inmates
> would prepare a final meal on Friday that would carry the
> kosher-keeping Jewish inmates through Saturday at sundown.
> The Sabbath Bag caused several major security problems at
> the prisons:  the inmates receiving the Sabbath bags would
> have an abundance of food at one time, which they would
> take back to their housing unit, and then, in violation of
> the prison rules, trade the food for goods or services with
> other inmates.  In my e-mail response [apparently *Exhibit
> B*, attached to the *Amended Complaint*], I did not encourage
> or participate in any decision regarding, or even address
> the issue of, serving meat and dairy products together or
> the use of a microwave on the Sabbath.

*Jackson Affidavit I*, ¶ 14.  Defendants argue that prison security is

not only a legitimate governmental interest but is in fact a

compelling governmental interest.  *Motion for Summary Judgment*, p. 15

20

(citing, *inter alia*, *Hoevenaar v. Lazaroff*, 422 F.3d 366, 368 (6th Cir. 2005)).

Plaintiff disagrees, representing, without evidentiary support, that defendant Jackson permitted such bags when she was the warden at another correctional facility. *Plaintiff's Opposition*, p. 10. Plaintiff also asserts that the Sabbath bag practice "has been utilized at all prisons in Ohio since February 1, 2013" and that the "logistical nightmare" anticipated by defendant Jackson has not resulted. *Id*. at 10-12 (citing *Exhibit G*, attached to the *Amended Complaint*). Defendants, however, apparently contest the authenticity of *Exhibit G*, arguing that plaintiff's contentions cannot be considered at the summary judgment stage. *See Reply*, p. 3 (arguing, *inter alia*, that they have set forth a valid, rational connection between the prison regulation and a legitimate government interest and that "[t]he rest of Plaintiff's allegations are unsupported, inadmissible, and cannot be considered on summary judgment"). This Court agrees. *See Harris*, 627 F.3d at 239 n.1. Moreover, even if *Exhibit G* had been authenticated, consideration of this document does not support plaintiff's assertions. This exhibit is an undated, 2-page document entitled, "Ohio Department of Rehabilitation and Correction Kosher Menu." *Exhibit G*, at PAGEID#:373. Although the exhibit details the contents of a Sabbath bag, *id*. at PAGEID#:374, the document says nothing regarding the logistical burden of administering these bags or otherwise establishes that no problems or security risks are created by distributing these bags. In short, plaintiff has offered nothing to controvert defendant Jackson's sworn affidavits.

For all of these reasons, as it relates to plaintiff's First Amendment claim based on heating his Kosher meal in the microwaves on his Sabbath, defendants are entitled to summary judgment.

## V.  RLUIPA CLAIMS

Although it is not immediately clear, it appears that plaintiff asserts claims under RLUIPA.  *See*, *e.g.*, *Amended Complaint*, ¶¶ 11-16. RLUIPA prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]"  42 U.S.C. § 2000cc-1(a).  *See also Cutter v. Wilkinson*, 544 U.S. 709 (2005) (upholding constitutionality of RLUIPA).  "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter*, 544 U.S. at 721.  However, in determining whether or not an accommodation is entitled to protection under RLUIPA, "'the sincerity of a prisoner's professed religiosity'" should be considered.  *Colvin*, 605 F.3d at 298 (quoting *Cutter*, 544 U.S. at 725 n.13).

"The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007).  *See also Barhite v. Caruso*, No. 09-1312, 377 F. App'x. 508, at *511 (6th Cir. May 14, 2010) ("RLUIPA [ ] requires an inmate to show that his or her religious exercise [is] substantially burdened.").  A "substantial burden" "force[s] an individual to choose between 'following the

precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hayes v. Tennessee*, No. 09-5529, 424 Fed. Appx. 546, at *555 (6th Cir. June 1, 2011) (quoting *Barhite*, 377 F. App'x at 511).

A plaintiff must initially establish that the challenged action "substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b); *Hayes*, 424 Fed. Appx. 546, at *554 ("An inmate asserting a claim under the RLUIPA must first produce prima facie evidence demonstrating that his religious exercise was substantially burdened."). If the plaintiff carries this burden, the government must then establish that that substantial burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b). *See also Hayes*, 424 Fed. Appx. 546, at *555.

The United States Court of Appeals for the Sixth Circuit recently concluded that RLUIPA does not authorize an award of monetary damages against defendants in their individual capacities:

> Congress's failure to speak so clearly here renders any putative individual-capacity, money-damages condition in RLUIPA inappropriate. . . . We have considerable company in reaching this conclusion. Every circuit to consider the question, whether before *Sossamon* [*v. Texas*, 131 S. Ct. 1651, 1655 (2011)] or after, has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities.

*Haight v. Thompson*, No. 13-6005, 2014 U.S. App. LEXIS 15703, at *34 (6th Cir. Aug. 15, 2014) (citations omitted). Accordingly, as to defendants' request for summary judgment on the RLUIPA claim because

23

of the unavailability of money damages against defendants in their
individual capacities, the *Motion for Summary Judgment* is well-taken.

## VI.  EIGHTH AMENDMENT CLAIMS

Plaintiff alleges that defendants Gallaer and Jackson violated
his Eighth Amendment rights by serving him meat and dairy together in
the same meal and when all the defendants required plaintiff to cook
his meal on the Sabbath, resulting in weight loss for plaintiff.  The
Sixth Circuit has previously held that "the deliberate and unnecessary
withholding of food that is essential to normal health can constitute
the deliberate indifference to medical needs that violates the Eighth
Amendment." *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009)
(citing *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977)).
Deliberate indifference in violation of the Eighth Amendment contains
both a subjective and an objective component. *Farmer v. Brennan*, 511
U.S. 825, 835-57 (1994).  Plaintiff bears the burden of demonstrating
these components. *See*, *e.g.*, *Meier v. County of Presque Isle*, Nos.
09-1318, 09-1350, 376 Fed. Appx. 524, at *528 (6th Cir. May 6, 2010)
(citing *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008);
*Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir.
2001)).

"To satisfy the subjective component, the plaintiff must allege
facts which, if true, would show that the official being sued
subjectively perceived facts from which to infer substantial risk to
the prisoner, that he did in fact draw the inference, and that he then
disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th
Cir. 2001).  "[A]n official's failure to alleviate a significant risk

24

that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. *See also Comstock*, 273 F.3d at 703 ("'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'") (quoting *Farmer*, 511 U.S. at 836).

In the case presently before the Court, defendants contend that LoCI prison staff may have accidentally served meat and dairy on some occasions, but that any mistake in this regard was immediately corrected. *Motion for Summary Judgment*, p. 21. Defendants also take the position that they were unaware that causing plaintiff to warm his pre-cooked frozen Kosher meals on the Sabbath violated plaintiff's religious beliefs. *Id*. Defendants' arguments are well-taken. As set forth in detail *supra*, the record reflects that defendants Gallaer and Jackson did not personally serve meat and dairy together at the same meal and that any occasion on which LoCI prison staff may have done so was isolated and promptly rectified. *See*, *e.g.*, *Gallaer Affidavit*, ¶¶ 12, 15-16, 18-19; *Jackson Affidavit*, ¶¶ 5, 12, 16-17; *Cahill Affidavit*, ¶¶ 13-14. Moreover, there is no evidence that any of the defendants was aware that re-heating frozen Kosher meals in a microwave on the Jewish Sabbath violated plaintiff's religion. *Gallaer Affidavit*, ¶ 9; *Jackson Affidavit*, ¶ 10; *Cahill Affidavit*, ¶ 9. Under these circumstances, plaintiff has not met his burden in establishing the subjective prong of his claims. *See*, *e.g.*, *Farmer*, 511 U.S. at 838. *See also Comstock*, 273 F.3d at 703.

Even if plaintiff could establish the subjective component, he

25

has not satisfied the objective component, which requires that a deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834. Defendants contend that any weight loss experienced by plaintiff is *de minimis* and insufficient to constitute the physical injury necessary to an Eighth Amendment claim. *Motion for Summary Judgment*, pp. 22-23. Noting that the Prison Litigation Reform Act ("PLRA") requires inmates to have suffered a physical injury before recovering monetary damages, defendants argue that courts have held that weight loss in the prison setting is generally not considered an actionable physical injury. *Id.* at 22 (collecting cases). In support of the argument that plaintiff's weight loss was *de minimis*, defendants previously submitted the affidavit of Robin Murphy, ODRC's Health Care Administrator at LoCI. *See Affidavit of Robin Murphy*, Doc. No. 76-5 ("*First Murphy Affidavit*"). In that affidavit, Ms. Murphy averred that medical records reflected that, on March 19, 2013, plaintiff weighed 192 pounds. *Id.* at ¶ 4. Thereafter, defendants were granted leave to file a corrected affidavit with attached medical records. *See* Doc. Nos. 80, 86, 95.[8] Ms. Murphy's revised affidavit avers that attached medical records establish that plaintiff's weight was 222 pounds on March 10, 2013. *Affidavit of Robin Murphy*, ¶ 4, Doc. No. 96 ("*Revised Murphy Affidavit*"). With the *Revised Murphy Affidavit*, defendants go on to chronicle plaintiff's weight:

      12/31/09 - 216.2  lbs (upon entering prison)

---

[8] Defendants filed Ms. Murphy's "revised" affidavit when moving for summary judgment. *See* Doc. No. 92-5. However, that affidavit failed to attach the referenced medical records. *Id.* Upon the Court's *Order*, Doc. No. 95, defendants filed the affidavit under seal with the referenced medical records. Doc. No. 96.

```
4/31/10 - 216.2  lbs

8/21/11 - 226    lbs

1/16/12 - 222    lbs

3/30/12 - 233    lbs

5/17/12 - 255.5  lbs

6/20/12 - 247    lbs

8/17/12 - 254    lbs (transfer to LOCI)

9/25/12 - 238    lbs

11/26/12 - 225   lbs

12/10/12 - 224.4 lbs

3/10/13 - 222    lbs[9]
```

*Motion for Summary Judgment*, p. 23 (citing *Revised Murphy Affidavit* and medical records attached thereto).  Defendants therefore argue that plaintiff's allegation – made in the unverified *Amended Complaint*, ¶ 42 –  that he weighed 192 pounds as of March 9, 2013 is unfounded and incorrect because the medical records reflect that plaintiff weight 222 pounds on March 10, 2013.  *Motion for Summary Judgment*, p. 23 (citing *Second Murphy Affidavit* and exhibits attached thereto).  Defendants therefore calculate that plaintiff lost 32 pounds between August 17, 2012 and March 9, 2012.  *Id*.  Defendants also point out that plaintiff's weight as of March 2013 (222 pounds) is still greater than his weight when he entered prison (216.2 pounds) and that his body mass index (23.6%) is within normal range and proportionate to his height.  *Id*. (citing *Revised Murphy Affidavit*, ¶ 4).  Defendants go on to suggest that plaintiff's weight loss was a

---

[9] The *Amended Complaint* was filed on March 18, 2013.

27

matter of choice when he decided to become a vegetarian and refused to eat meat. *Id.* at 23 (citing *Exhibit 6* attached the response in opposition to plaintiff's motion for summary judgment, Doc. No. 76; *Cahill Affidavit*, ¶ 19).

In response, plaintiff contends that no medical records support the *Revised Murphy Affidavit* and that, in any event, plaintiff previously pled in his *Amended Complaint* that he weighed 192 pounds on March 9, 2013 and that he weighed even less, 189 pounds, as of April 3, 2013. *Plaintiff's Opposition*, pp. 4, 17 (citing *Amended Complaint*, ¶ 42; the *First Murphy Affidavit; Affidavit of Joshua Copenhaver Nelson*, ¶¶ 3-4, attached as *Exhibit 3* to *Plaintiff's Opposition* ("*Plaintiff's April 5, 2013 Affidavit*")).

As noted *supra*, the PLRA requires that a prisoner have suffered a physical injury before recovering monetary damages in a federal civil action under the Eighth Amendment. *Yaacov v. Collins*, No. 09-4148, 2010 U.S. App. LEXIS 27719, at *10 (6th Cir. Dec. 1, 2010) (citing 42 U.S.C. § 1997e(e)). Although the required physical injury "need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *See*, *e.g.*, *Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005). An inmate's diet and weight loss may, under some circumstances, constitute an actionable physical injury. *Cf. Colvin*, 605 F.3d at 290 ("'[P]rison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions.'") (quoting *Alexander v. Carrick*, No. 00-1261, 31 F. App'x 176, at *179 (6th Cir. Mar. 19, 2002)); *Alexander*, 31 Fed. Appx. 176, at *179 ("For the inmate, this is essentially a constitutional

right not to eat the offending food item.  If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated."); *Ward v. Gooch*, 5:07-CV-389, 2010 U.S. Dist. LEXIS 118566 (E.D. Ky. Nov. 5, 2010) (finding that evidence that inmate lost 68 pounds over 10 month period and received 200-700 calories a day for almost a year was sufficient to raise genuine issue of material fact on the plaintiff's Eighth Amendment claim).

In the case presently before the Court, plaintiff argues that his weight was 192 pounds in March 2013, by relying on allegations in the *Amended Complaint*, the *First Murphy Affidavit* and *Plaintiff's April 5, 2013 Affidavit*.  Plaintiff's reliance on unsworn allegations in the *Amended Complaint*, however, will not be considered at the summary judgment stage for the reasons stated *supra*.  While the *First Murphy Affidavit*, ¶ 4, averred that "[t]he attached records indicated that on March 19, 2013, inmate Copenhaver-Nelson's weight was 192 pounds[,]" Ms. Murphy later explained that this statement was inaccurate and unsupported by the medical records.  *Revised Murphy Affidavit*, ¶ 5. Instead, Ms. Murphy clarified that plaintiff weighed 222 pounds on March 10, 2013.  *Id*. at ¶ 4.  Plaintiff nevertheless insists that he weighed 189 pounds in April 2013, as "recorded within my medical records maintained by the Ohio Department of Rehabilitation and Correction." *Plaintiff's April 5, 2013 Affidavit*, ¶ 4.  This statement, although sworn, is contradicted by the objective medical records upon which plaintiff relies and is insufficient to raise a material issue of fact relating to this issue.  *Cf*. medical record,

29

PAGEID#: 866, attached to the *Revised Murphy Affidavit* (stating that plaintiff weighed 222 pounds on March 10, 2013); *Hoffner v. Bradshaw*, 622 F.3d 487, 500 (6th Cir. 2010) ("This self-serving affidavit carries little weight, especially in light of the copious evidence in the record to contradict it."); *Whitley v. Spencer County Police Dep't*, No. 97-5904, 1999 U.S. App. LEXIS 5862, at *7 (6th Cir. Mar. 26, 1999) ("However, the objective medical evidence contradicts plaintiff's self-serving affidavits and conclusory allegations.").

The record establishes that plaintiff weighed 222 pounds on March 10, 2013. *Revised Murphy Affidavit*; medical record, PAGEID#: 866, attached thereto. Accordingly, with a beginning weight of 216 pounds when he entered prison, *see* medical record, PAGEID#: 846, attached to *Revised Murphy Affidavit*, plaintiff lost 32 pounds between August 17, 2012 and March 9, 2013. *Id*. As defendants highlight, the March 2013 weight (222 pounds) is still greater than plaintiff's weight when he entered prison (216.2 pounds). Moreover, the *Revised Murphy Affidavit* explains that plaintiff's body mass index (23.6%) is within normal range and is proportionate to plaintiff's height, and this assertion is uncontroverted. *See Revised Murphy Affidavit*, ¶ 4. Based on these facts, the Court cannot say that plaintiff suffered more than a *de minimis* injury. Accordingly, the Court concludes that plaintiff has failed to meet the objective prong of his Eighth Amendment claims. For these reasons, as it relates to plaintiff's Eighth Amendment claims, the *Motion for Summary Judgment* is well-taken.

## VII.  SECTION 1985 CLAIMS

Plaintiff asserts a claim under 42 U.S.C. § 1985.  *Amended Complaint*, ¶ 2.  Section 1985, which is composed of three subsections, "prohibits conspiracies interfering with civil rights."  *Watkins v. New Albany Plain Local Sch.*, 711 F. Supp. 2d 817, 834 (S.D. Ohio 2010).  The first subsection prohibits a conspiracy to prevent a person from accepting or holding any office; from discharging duties of such office; inducing a person to leave any office; or injuring a person or that person's property because of the lawful discharge of official duties.  42 U.S.C. § 1985(1).  The second subsection addresses conspiracies to deter or obstruct justice or to intimidate a party, witness or juror.  *Id.* at § 1985(2).  Finally, the third subsection forbids conspiracies to deprive a person or class of persons of the equal protection of the law or of equal privileges and immunities under the law.  *Id.* at § 1985(3).

In the case presently before the Court, plaintiff does not specify which subsection he intends to pursue.  However, the *Amended Complaint* alleges that the defendants "acted in concert" to violate plaintiff's rights:

> Defendants Jackson, Gallaer and Cahill, directly acted in concert to knowingly violate applicable laws of the United States and State of Ohio, which provide for free exercise of religion, through promulgation of a maliciously-based policy predicated upon attacking the Plaintiff since he is Jewish, and other observants of the Kosher diet at the London facility, to attempt to cause the Plaintiff and others observing the Kosher diet to cease taking part within the religious observance due imposition of conditions of which a reasonable person would have known was obstructive to the practice of the Plaintiff's and other parties religions.

31

*Amended Complaint*, ¶ 41 [sic].  In opposing the *Motion for Summary Judgment*, plaintiff further contends that the *Amended Complaint* "alleges that the defendants conspired for the purpose of depriving the Plaintiff and other Jewish offenders or other adherents at the London facility the protection of law, and that Defendant Jackson issued orders (Doc, 32, Exhibit B) and conspirators committed acts in furtherance of the conspiracy[.]" *Plaintiff's Opposition*, p. 17.  The Court construes these allegations as asserting a claim under § 1985(3).

> To prevail on a § 1985(3) claim, one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (internal quotation marks omitted).

Plaintiff argues that summary judgment on this claim is not appropriate because defendants served him meat and dairy together at the same meal and required him to cook on his Sabbath.  *Plaintiff's Opposition*, pp. 17-18.  These arguments, however, are based on the same allegations and evidence previously considered *supra* in connection with plaintiff's other claims.  *See id*.  For the reasons already stated, the Court therefore finds that there is no evidence of purposeful deprivation of plaintiff's protected rights.  As it relates to plaintiff's Section 1985(3) claims, summary judgment in defendants' favor is warranted.

**VIII. SECTION 1997e(e) CLAIMS**

Plaintiff asserts a claim under 42 U.S.C. § 1997e(e).  *Amended Complaint*, ¶¶ 2, 49; *Plaintiff's Opposition*, p. 19.  This statute, part of the Prison Litigation Reform Act, provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" 42 U.S.C. § 1997e(e).  In support of this claim, plaintiff insists that his alleged weight loss constitutes an actionable injury.  In opposing defendants' request for summary judgment, plaintiff argues that defendants' evidence in this regard is contradictory and that summary judgment is therefore unwarranted.  *Plaintiff's Opposition*, p. 19.  However, for the reasons stated *supra*, this Court disagrees.  Taking the record as a whole, the Court concludes that defendants are entitled to summary judgment on plaintiff's Section 1997e(e) claims.

**IX.  SECTION 2000(d) CLAIMS**

Plaintiff also asserts a claim under 42 U.S.C. § 2000(d).  *Amended Complaint*, ¶ 2.  Section 2000d provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  As defendants point out, *Motion for Summary Judgment*, p. 27, plaintiff has not asserted a claim based on race, color, or national origin; his claim is based on religion.  Plaintiff apparently agrees.  *Plaintiff's Opposition*, p. 19

33

("Plaintiff's claims are not grounded in discrimination in race, color
or national origin."). Plaintiff, however, later contradicts himself,
insisting that defendants violated Section 2000d for the following
reasons: "The ideal of being Jewish is sound is a religion, culture,
and race. Therefore, denial of adherence to the Jewish religion is
subjugation of the Jewish race, because one is Jewish." *Id*.[sic].
Even assuming, *arguendo,* that plaintiff has properly asserted a claim
under Section 2000d, there is no evidence before the Court that
defendants discriminated against plaintiff because of his Jewish race.
Accordingly, as it relates to his claim under 42 U.S.C. § 2000d, the
*Motion for Summary Judgment* is meritorious.

## X.    SECTION 1988 CLAIMS

Finally, the *Amended Complaint* asserts a claim under 42 U.S.C. §
1988. *Amended Complaint*, ¶¶ 2, 49. Section 1988 confers upon courts
the discretion to award reasonable attorney's fees to a prevailing
party in, *inter alia*, a § 1983 or § 1985 action. *See* 42 U.S.C. §
1988(b).

In the present case, plaintiff is not a prevailing party nor has
he retained counsel. To qualify as a prevailing party, a plaintiff
must obtain either "a judgment on the merits or a court-ordered
consent decree." *Toms v. Taft*, 338 F.3d 519, 528 (6th Cir. 2003)
(quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health
and Human Resources*, 532 U.S. 598, 600 (2001)) (internal quotation
marks omitted). Plaintiff has obtained neither form of relief and is
therefore not entitled to fees under § 1988. Additionally, plaintiff
is proceeding *pro se*. *See*, *e.g.*, *Order*, Doc. No. 65 (denying without

34

prejudice to renewal plaintiff's motion for appointment of counsel);
*Plaintiff's Opposition* (signed by plaintiff). "[P]ro se litigants are
not eligible for attorney's fees under 42 U.S.C. § 1988[.]" *Chute v.
Odom*, No. 3:12-0607, 2013 U.S. Dist. LEXIS 122607, at *9 (M.D. Tenn.
Aug. 28, 2013). For these reasons, the *Motion for Summary Judgment* as
to plaintiff's request for fees under § 1988 is well-taken.

   **WHEREUPON**, it is **RECOMMENDED** that *Defendants Wanza Jackson,
Steven Cahill, and William Gallaer's Motion for Summary Judgment*, Doc.
No. 92, be **GRANTED.**

   If any party seeks review by the District Judge of this *Report
and Recommendation*, that party may, within fourteen (14) days, file
and serve on all parties objections to the *Report and Recommendation*,
specifically designating this *Report and Recommendation*, and the part
thereof in question, as well as the basis for objection thereto. 28
U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections
must be filed within fourteen (14) days after being served with a copy
thereof. Fed. R. Civ. P. 72(b).

   The parties are specifically advised that failure to object to
the *Report and Recommendation* will result in a waiver of the right to
*de novo* review by the District Judge and of the right to appeal the
decision of the District Court adopting the *Report and Recommendation*.
*See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of
Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States
v. Walters*, 638 F.2d 947 (6th Cir. 1981).

August 19, 2014                    *s/Norah McCann King*
                                   Norah McCann King
                              United States Magistrate Judge